**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**BENJAMIN FORREST CARTER,**

      **Plaintiff,**

  **v.**                                   **Civil Action No. 3:23cv878**

**TRENTON GREENE,**

      **Defendant.**

## <u>MEMORANDUM OPINION</u>

Benjamin Forrest Carter, a Virginia inmate,[1] and frequent litigant in this Court, filed this 42 U.S.C. § 1983 action in which he alleges that Defendant Greene violated his First[2] and Eighth[3] Amendment rights by retaliating against him during his incarceration in Sussex I State Prison ("Sussex I"). In his Verified Complaint ("Complaint," ECF No. 7), Carter raises the following claims for relief:[4]

> Claim One:    Defendant Greene "assaulted me and slammed me on my injured rotator cuff . . . in retaliation for filing grievances against him . . . for his sexual harassment and [this conduct] constitutes:"

---

[1] Since the filing of this lawsuit, Carter was released from state custody. However, mere months after his release, he was charged and detained again for first-degree murder and corresponding weapons charges. *See* https://www.wavy.com/news/local-news/newport-news/nnpd-man-arrested-in-connection-with-fatal-shooting-on-wickham-ave/ (last visited May 1, 2026).

[2] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization, punctuation, and removes the emphasis in the quotations from the parties' submissions. The Court also corrects the spelling of Defendant Greene's name.

> (a) "excessive force in violation of my 8th Amendment" rights; and,
> (b) a violation of his "1st Amendment" right "to be free from retaliation."
> (ECF No. 7, at 9.)

Carter requests monetary damages. (ECF No. 7, at 10–11.) The matter is before the Court the

Motion for Summary Judgment filed by Defendant Greene. (ECF No. 43.) The Court provided

Carter with a *Roseboro*[5] notice. (ECF No. 45.) Carter has filed an Opposition. (ECF No. 48).

For the reasons set forth below, Defendant Greene's Motion for Summary Judgment (ECF

No. 43) will be DENIED.

## I.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the

court of the basis for the motion, and to identify the parts of the record which demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

marks omitted). When the motion is properly supported, the nonmoving party must go beyond

the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

(quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences

in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835

---

[5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

(4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Defendant Greene has submitted his own Declaration (ECF No. 44-1, at 1–3); relevant disciplinary records for Carter (ECF No. 44-1, at 4–15, 20); and, results from the Prison Rape Elimination Act ("PREA")[6] complaint that Carter filed against Defendant Green (ECF No. 44-1, at 16–19).

At this stage, the Court is tasked with assessing whether Carter "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified

---

[6] Prison Rape Elimination Act, 34 U.S.C. § 30301-30309, addresses sexual abuse and harassment in the prison setting.

3

evidence. *Celotex Corp.*, 477 U.S. at 324. Carter filed a Declaration with his Opposition. (ECF No. 48-1.)[7] Carter's Complaint is also sworn to under penalty of perjury.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Carter.

## II. Summary of Relevant Facts

Defendant Greene is a former Corrections Lieutenant at Sussex I State Prison. (ECF No. 44-1 ¶ 1.) Virginia Department of Corrections ("VDOC") records reflect that Carter was transferred to Sussex I on June 22, 2022, where he was housed in Housing Unit 3A. (ECF No. 44-1 ¶ 4.) During escort to his cell on his arrival, Carter "became disgruntled and stated that he has no problem assaulting staff." (ECF No. 44-1, at 4.)[8] When Carter reached his cell, he

---

[7] The Court received two copies of Carter's Opposition and Declaration. (ECF Nos. 56, 57.) The Opposition itself is not admissible evidence. The Court informed Carter previously: "[T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled 'Affidavit' or 'Sworn Statement,' and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein." (ECF No. 17, at 2.)

To the extent that Carter raises new allegations about Defendant Greene in his Opposition, a plaintiff may not introduce new allegations or claims in an opposition brief. *See Barclay White Skansa, Inc.v. Battelle Mem'l Inst.*, 262 F. Appx. 556, 563 (4th Cir. 2008) (explaining that a plaintiff may not amend their complaint through briefs in opposition to a motion for summary judgment); *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics. Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs").

[8] The Court's evaluation of Carter's current conduct does not occur in a vacuum. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (explaining that a court may review other court records); *Clay v. Yates*, 809 F. Supp. 417, 427–28 (E.D. Va. 1992) ("[I]t is appropriate to consider what the court's records show about the number and kinds of cases instituted by the *pro se* litigant, and the extent to which the conduct of that litigant constitutes and an abuse of the judicial process." (citations omitted)). It is undisputed that Carter is a dangerous inmate. Carter has an extensive history of threatening, assaulting, and battering staff and filing false PREA complaints, and then claiming that any repercussion from his actions is retaliation. *See generally Carter v. Rigby*, No. 3:23cv06, 2024 WL 3745851 (E.D. Va. Aug. 9, 2024); *Carter v. Ely*, No. 7:20–cv–00713, 2024 WL 1160559, at *1 (W.D. Va. Mar. 18, 2024)

4

"refused to step into cell 3A-06 and laid on the floor in front of the control booth." (ECF No. 44-1, at 4.) Carter refused to allow the guard to remove his restraints and then spit on the guard twice, resulting in a charge of simple assault on staff against Carter. (ECF No. 44-1, at 4.)

The following day, on June 23, 2022, Carter was agitated because he had not received his property. (ECF No. 44-1, at 6.) A guard noted he would receive his property later, however, "Carter stated that he was refusing to allow the tray slot to be secured." (ECF No. 44-1, at 6.) While the guard was attempting to secure the tray slot, "Carter grabbed [the guard's] right hand and used his finger nail to cut in between Lt. Tucker's right index and middle finger." (ECF No. 44-1, at 6.) Carter again was charged with simple assault on staff. (ECF No. 44-1, at 6.) Defendant Greene was not involved in the June 22 or 23, 2022 incidents. (ECF No. 44-1 ¶¶ 4–5.)

Carter contends that Defendant Greene would often stare at him "specially looking at [his] genital area." (ECF No. 7 ¶ 3.) Defendant Greene denies this. (ECF No. 44-1 ¶ 6.) On June 28, 2002, Carter "finally built up the courage to say to him that [he] wasn't interested in him, and to stop coming to my cell and looking at my genital area," and Defendant Greene "threatened to give [Carter] a charge to have my TV taken away and my IM-2 privileges." (ECF No. 7 ¶ 4.)[9] Carter wrote a Regular Grievance reporting "sexual harassment, verbal threats, only

_____

(describing May 2020 attack by Carter that caused guard to lose consciousness and he "suffered multiple facial fractures, including a fracture of the orbital bone below the eye socket" that required the guard to retire and surgery that "included the installation of a metal plate on the side of his face and below the eye," and ultimately led to a jury verdict for the guard).

[9] The Court omits the details that Carter provides about the alleged sexual harassment, because whether or not the sexual harassment occurred is not the subject of this lawsuit. Instead, Carter alleges that Defendant Greene used excessive force against Carter and that Defendant Greene retaliated against Carter for exercising his First Amendment right to file grievances. Defendant Greene's denial of ever harassing Carter or staring at his genitals does not constitute a material fact. (ECF No. 44-1 ¶ 6.)

requested to be separated from Greene due to his sexual advances unwanted towards me per PREA . . . and placed it in the mail that night." (ECF No. 7 ¶ 5.)  Carter contends that the following day, June 29, 2022, after Defendant Greene allegedly made sexual comments towards Carter, Carter immediately filed another grievance complaining of "sexual unwanted advances to me" that day.  (ECF No. 44-1 ¶¶ 7–8.)  On June 30, 2022, Carter once again contends that Defendant Greene stared at his genitals and then made an inappropriate comment, and Carter filed yet another grievance.  (ECF No. 44-1 ¶¶ 10–11.)

Carter's complaints were investigated by the Sussex I Intel Officer as PREA claims, and Defendant Greene was interviewed by the investigator.  (ECF No. 44-1 ¶ 6.)  On July 30, 2022, the claim was deemed unsubstantiated, and Carter was notified of this result on August 1, 2022, but Carter refused to sign for the report.  (ECF No. 44-1 ¶ 6; ECF No. 44-1, at 16.)  The report noted that Carter "has filed several false PREA allegation[s] against staff."  (ECF No. 44-1, at 8.)

On August 4, 2022, Carter was returned to Sussex I from Red Onion State Prison for a court appearance.  (ECF No. 44-1 ¶ 7.)  Defendant Greene recalls that it was raining that day and several inmates were scheduled to be escorted to the medical department for appointments, including Carter.  (ECF No. 44-1 ¶ 7.)  Two officers are required to escort each inmate and multiple officers and supervisors were assembled to transport inmates to medical.  (ECF No. 44-1 ¶ 7.)  Carter contends that Defendant Greene "ordered that I be put in handcuffs behind my back in retaliation so there was no way for me to have my rotator cuff assessed and against a medical order not to rear cuff [me]."  (ECF No. 7 ¶ 14.)  Defendant Greene explains that, "Carter was restrained in leg irons and handcuffs with his hands in front with a handcuff box that secures the waist chain and cuffs in accordance with policy and procedures."  (ECF No. 44-1 ¶ 7.)

Defendant Greene and another officer escorted Carter to medical (ECF No. 44-1 ¶ 7), and Carter contends he "was in pains extremely in [his] left . . . shoulder." (ECF No. 7 ¶ 15.)

According to Carter, Defendant Greene made him walk in the rain "for trying to write [him] up," and then on the way back to the Restrictive Housing Unit, Defendant Greene said "paybacks a bitch" and slammed Carter on the concrete, "landed on top of [Carter] as [his] shoulder made a popping noise and began burning," and "kept pulling my arm up and slamming me on the concrete ground." (ECF No. 7 ¶¶ 17–19.) According to Defendant Greene, Carter "placed himself on the concrete without the assistance of escorting staff members." (ECF No. 44-1 ¶ 7.) Defendant Greene avers that "[a]t no time did [he] slam Carter to the ground or use any force against him," and that Carter "intentionally laid on the ground." (ECF No. 44-1 ¶ 8.) Defendant Greene explains that "had force been used on Carter, [he] would have written an incident report." (ECF No. 44-1 ¶ 8.) At most, Defendant Greene "attempted to assist Carter up from the ground to a standing position," a supervisor then arrived, and Defendant Greene and the other escorting officer were relieved. (ECF No. 44-1 ¶ 8.) Carter contends that officers arrived and saw Defendant Greene "assaulting me and immediately pulled Greene off of me." (ECF No. 7 ¶ 8.)

On August 7, 2022, Carter again assaulted Sgt. K. Daugherty by reaching through the tray slot, smacking her hand, and cutting her with his fingernail. (ECF No. 44-1, at 20.) Defendant Greene was not involved in this incident. (ECF No. 44 ¶ 9.)

### III.  Analysis

Little discussion is warranted here.  The Court is constrained to find that the summary judgment record reflects a genuine dispute of material facts as to whether Defendant Greene used

excessive force against Carter, and whether this excessive force was in retaliation of Carter exercising his First Amendment right to file grievances and complaints.

## A. Excessive Force

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate claims that prison officials used excessive force against his [or her] person, the objective component is less demanding relative to the subjective component. *See id.* With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Regarding the subjective component, the inmate must demonstrate "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

8

In Claim 1(a), Carter contends that Defendant Greene used excessive force against him when Defendant Greene "assaulted [him] and slammed me on [his] injured rotator cuff." (ECF No. 7, at 9.) The evidence recited above reflects a genuine dispute of material facts as to whether Defendant Greene slammed Carter on the concrete or whether Carter intentionally laid on the ground and Defendant Greene simply attempted to help him up from the floor. Accordingly, the Motion for Summary Judgment will be DENIED with respect to Claim One (a).

## B. First Amendment Retaliation

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted). "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ." *Adams*, 40 F.3d at 74. Instead, a plaintiff must show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Id.* at 75.

For Carter's claim of retaliation to survive summary judgment, he is "required to produce sufficient evidence 'that (1) [he] engaged in protected First Amendment activity, (2) [the defendants] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [the defendants'] conduct.'" *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) (first, third and fourth alteration in original) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)).

9

On the record before the Court, based on the facts asserted by Carter, a reasonable jury could find that Carter was engaged in a protected First Amendment activity when he filed grievances, *see Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017), that Carter suffered adverse action through the use of excessive force by Defendant Greene, and that Defendant Greene was aware of Carter's complaints against him. Thus, a factfinder could find that Defendant Greene violated Carter's First Amendment right to be free from retaliation. Accordingly, the Motion for Summary Judgment will be DENIED with respect to Claim One (b).

### B. Motion to Compel Discovery

Carter also filed a Motion to Compel Discovery. (ECF No. 52.) Carter indicates that he requested video footage from August 4, 2022, but has not been provided with this video footage. (*Id.* at 1; ECF No. 52-1, at 1.) Defendant Greene has filed a response. (ECF No. 60.)[10] Defendant Greene explains that as he has explained to Carter several times, no video footage of the incident is known to be in the possession of Defendant Greene or the VDOC. (ECF No. 60, at 2.) Counsel for Defendant Greene indicates that he "is conducting a follow-up enquiry to ascertain whether the footage can be located by alternative means, but has found no indication that the footage is available in any form." (*Id.*) Defendant Greene cannot be compelled to produce a video that is not in his possession or that does not exist. Accordingly, the Motion to Compel (ECF No. 52) will be DENIED.

---

[10] Defendant Greene's response plainly reflects that he provided Carter with the majority of the documents that Carter requested. (ECF No. 60-1. at 1–2.) Carter's Motion to Compel is limited to obtaining video footage from August 4, 2022.

## V. Conclusion

Defendant Greene's Motion for Summary Judgment (ECF No. 43) will be DENIED.

Carter's Motion to Compel (ECF No. 52) will be DENIED. The matter will be set for a jury trial and for settlement in forthcoming orders.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: **5/14/26**
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

11